UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RITE AID OF NY, INC.,

                Petitioner,

-against-

1199SEIU UNITED HEALTHCARE WORKERS EAST,

                Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/1/16

**OPINION AND ORDER**

16 Civ. 1821 (ER)

Ramos, D.J.:

    This dispute centers on allegations that Rite Aid of NY, Inc. ("Rite Aid") breached a collective bargaining agreement ("CBA") with 1199SEIU United HealthCare Workers East ("1199" or "Union") by failing to contribute to an employee benefit fund at the rate required by the CBA. On March 6, 2016, an arbitrator issued an Opinion and Award ("Award") in favor of the Union, finding that Rite Aid breached the CBA by failing to contribute to the fund at the proper rate. Rite Aid thereafter instituted this action by filing a petition to vacate the Award ("Petition") and now seeks summary judgment granting its Petition. 1199 seeks summary judgment denying the Petition, confirming the Award, and awarding the Union attorney's fees. For the following reasons, Rite Aid's motion for summary judgment is DENIED, and 1199's motion for summary judgment is GRANTED.

**I. BACKGROUND**

    The material facts, which are drawn from the Petition and the parties' submissions in support of their cross-motions for summary judgment, are not in dispute.

    Rite Aid is a New York corporation that operates retail pharmacy stores throughout the state. Rite Aid's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Doc. 25)

("Rite Aid's 56.1") ¶ 1. 1199 is the exclusive representative of certain of Rite Aid's employees for collective bargaining over the terms and conditions of their employment. 1199's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Doc. 19) ("1199's 56.1") ¶ 1.

In 1998, Rite Aid and 1199 entered into a CBA. *Id.* ¶ 2; Petition (Doc. 1), Ex. B. In 2009, the parties extended the CBA, with certain modifications, by entering into a Memorandum of Agreement ("MOA"). 1199's 56.1 ¶ 3; Petition, Ex. C. The MOA was itself further extended by an agreement dated May 5, 2015 ("Extension Agreement") while the parties negotiate a successor contract. 1199's 56.1 ¶ 4; Petition, Ex. D.

The MOA requires Rite Aid to make certain contributions to the 1199SEIU National Benefit Fund for Health and Human Service Employees ("Benefit Fund" or "NBF"), a jointly administered labor-management employee benefit trust fund that provides health and other benefits to Union members. 1199's 56.1 ¶¶ 7, 12. Approximately 335 employers contribute to the Benefit Fund, including approximately 50 employers who are members of the League of Voluntary Hospitals and Homes of New York ("League"), an association of health care industry employers who bargain collectively with the Union. *Id.* ¶¶ 8, 10. Rite Aid is not a member of the League. *Id.* ¶ 9.

Under the original terms of the MOA, both League and non-League employers contributed to the Benefit Fund at the same "Uniform Required Rate" or "URR." Rite Aid's 56.1 ¶¶ 12–13. Each employer's monthly contribution was calculated as a percentage of the employer's gross payroll for the previous month. 1199's 56.1 ¶ 13. On October 27, 2014, the Trustees of the Benefit Fund adopted a new "Flat Rate" contribution methodology, under which

employers would each pay different rates, determined and adjusted by historical contributions and cost experience. Rite Aid's 56.1 ¶¶ 20–21.[1]

In a letter dated November 5, 2014, the Benefit Fund notified Rite Aid and other employers of the foregoing changes in rates and methodology. 1199's 56.1 ¶ 22. The Benefit Fund directed the employers to comply with one of three options, depending on the nature of their respective CBAs: (1) if the employer's CBA had expired, the employer was required to "sign a new one that provides for contributions at the new required rates;" (2) if the employer's CBA was still in effect, the employer's "next Agreement [would] need to provide for contributions at the new rates," retroactive to the dates provided in the letter; or (3) if the employer's CBA "provides for contributions at the rate set by the Trustees," the employer would need to "contribute at the new rates." Rite Aid's 56.1 ¶ 23; Petition, Ex. E at 2.

The parties disagree about whether the MOA required Rite Aid to comply with the second or third option. The language at the center of the dispute is located at Paragraph E of the MOA, which provides, in relevant part:

> During the life of this Agreement and any extension hereof, **the Employer agrees to adopt, be bound by and to implement any changes in the Funds' contribution rates** (including diversions and suspensions thereof), without waiving any of its rights to challenge those diversions that inure to the benefit of only the League, League-specific Funds, and Funds that do not include as their beneficiaries the Employers' Associates (such as the Contract Administrators, RNLMI, RNJSF and CIPC) in the amounts and on the dates agreed to by the President of the League and the President of the Union, as determined by CIPC or **as set by the Funds' Trustees. If the Employer challenges such diversions, it shall continue to pay the URRs set by the Trustees** until such time as the merits of that challenge are determined by a tribunal of competent jurisdiction. Nothing

---

[1] Unlike the URR, which looks back at the previous month's payroll on a month-to-month basis, the Flat Rate methodology uses recent payroll data to determine an employer's projected payroll for the upcoming contract year. 1199's 56.1 ¶ 21. The Benefit Fund's actuaries multiply each employer's projected payroll by the contribution rate set by the Trustees and divide that amount into twelve even payments due each month. *Id.* If there are discrepancies between the projected and actual payroll in the prior period for an employer, the actuaries then increase or decrease that employer's flat rate for the following period. *Id.*

3

>   in this paragraph is an admission by either party concerning the merits of any such challenge.

Petition, Ex. C ¶ E (emphasis added).  According to the Union, Paragraph E provides for contributions at "any . . . rates . . . set by the Funds' Trustees;" Rite Aid was thus obligated under the third option to begin contributing at the new rates.  *Id.*; 1199's 56.1 ¶ 22.  Rite Aid, on the other hand, contends that Paragraph E only provides for contributions at a "URR[] set by the Trustees;" because the Trustees' changes were not mere adjustments to the URR, Rite Aid argues that it belonged in the second, not third, category.  Rite Aid's 56.1 ¶ 24; Rite Aid's Response to 1199's 56.1 (Doc. 26) ("Rite Aid's 56.1 Response") ¶ 22.  In further support, Rite Aid points to Paragraph D of the MOA, which defines the "NBF required contribution rate" as "NBF URR." Petition, Ex. C ¶ D; Rite Aid's 56.1 ¶ 16.

In accordance with the second option of the Benefit Fund's letter, Rite Aid continued to contribute to the Benefit Fund at the URR specified in the MOA—not the new rate set by the Trustees.  Rite Aid's 56.1 ¶ 25.  On October 8, 2015, the Union sent Rite Aid a "Notice of Intention to Arbitrate" the issue of Rite Aid's unpaid Benefit Fund contributions.  1199's 56.1 ¶ 25.  Pursuant to the MOA, the parties designated Alan R. Viani as the Arbitrator to resolve the dispute.  *Id.* ¶¶ 23–24.  A hearing was held before Arbitrator Viani on November 30, 2015.  *Id.* ¶ 25.  The parties presented their arguments, testimony, and documentary evidence at the hearing and subsequently submitted post-hearing briefs.  *Id.* ¶ 26.

On March 6, 2016, Arbitrator Viani issued his Opinion and Award.  *Id.* ¶ 27; Petition, Ex. A.  The Arbitrator explained that the question of whether Rite Aid must contribute at the new Flat Rate turned on the meaning of the language in Paragraph E of the MOA.  Petition, Ex. A at 7.  Rite Aid contended that Paragraph E only bound it to changes in the URR, and that it never contemplated or agreed to a contribution formulation other than a URR.  *Id.* at 8–11.  The Union

contended that Paragraph E clearly and unambiguously required Rite Aid "to adopt, be bound by and to implement *any* changes in the Funds' contribution rates" established by the Fund's Trustees. *Id.* at 12–16 (emphasis added). The Arbitrator noted that "[b]oth parties to this dispute [] advanced cogent and persuasive arguments in support of their respective positions," and that he gave those positions "considerable thought and consideration." *Id.* at 18.

The Arbitrator was "persuaded that when it entered into the [] MOA with the Union, [Rite Aid] truly believed that the methodology for computing its contribution rates would remain unchanged as a URR for the duration of its agreement." *Id.* Ultimately, however, the Arbitrator found himself "constrained to agree with the Union that the clear and unambiguous language of Section E absolutely requires [Rite Aid] to comply with the contribution rates established by the Fund's Trustees." *Id.* Accordingly, "[b]ecause the [MOA] was in full force and effect on October 27, 2014 when the Fund's Trustees adopted the new rates and it provided for contributions at the rate set by the Trustees," the Arbitrator found that Rite Aid "was delinquent in making full contributions to the Fund for the period January 1, 2015 to September 30, 2015." *Id.* at 19.[2]

On March 10, 2016, Rite Aid instituted this action by filing its Petition to vacate the Award. The Union thereafter moved for summary judgment, requesting that the Court deny the Petition to vacate the Award, confirm the Award, and grant the Union attorney's fees in accordance with the terms of the MOA. Rite Aid cross-moved for summary judgment.

---

[2] The Arbitrator noted that over $3 million was at issue, but he referred the question of the exact amount owed to the parties for resolution. Petition, Ex. A at 3, 19.

## II. DISCUSSION

A court's review of a labor arbitration award is very limited. "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Misco*, 484 U.S. at 38. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* at 36 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). Even when a court is convinced the arbitrator "committed serious error," if "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the arbitrator's decision should be upheld. *Id.* at 38.

Rite Aid simply cannot overcome the extremely deferential standard for judicial review of the Arbitrator's Award. The Arbitrator considered the parties' competing interpretations of the MOA, and ultimately agreed with the Union that "the clear and unambiguous language" of Paragraph E required Rite Aid to "comply with the contribution rates established by the Fund's Trustees." Petition, Ex. A at 18. Thus, the Arbitrator "properly grounded his decision in an interpretation of the terms of the bargaining agreement," and the Award must be confirmed. *Burns Int'l Sec. Servs. v. Int'l Union Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 17 (2d Cir. 1994).

Rite Aid argues that Arbitrator Viani ignored the plain language of the contract, thus dispensing his "own brand of industrial justice." Rite Aid's Mem. (Doc. 29) at 11. Yet Rite Aid's argument is premised entirely on the notion that Arbitrator Viani erroneously interpreted the agreement. *See, e.g., id.* at 6 (claiming that the Arbitrator erroneously interpreted the term "rates"), 7 (claiming that the Arbitrator did not adopt "[t]he only possible view of Paragraph E"), 8 (claiming that the Arbitrator "violate[d] the most basic principle of contract construction – giving effect to all terms"). Even if the Arbitrator misread the contract, that would not be a proper basis for vacating the Award. *Misco*, 484 U.S. at 38. "Having contracted with the Union to resolve disputes through a mutually-acceptable, neutral arbitrator, [Rite Aid] is not entitled to have the arbitrator's decision overturned simply because the arbitrator did not adopt its interpretation of the contract." *Burns*, 47 F.3d at 17 (affirming district court's order enforcing an arbitration award).

The parties agreed that "[i]n the event that the attorneys for . . . the Union are required to move in court for confirmation of the Award or to oppose a . . . motion to vacate or set aside the Award in whole or in part, reasonable attorney's fees shall be imposed by the Court, if the Award is confirmed." 1199's 56.1 ¶¶ 23–24. That is precisely what 1199 was required to do here. Accordingly, 1199 is entitled to recover reasonable attorney's fees.

### III. CONCLUSION

For the aforementioned reasons, Rite Aid's motion for summary judgment is DENIED, and 1199's motion for summary judgment is GRANTED. The Award is CONFIRMED, and 1199 is awarded reasonable attorney's fees. The Union is directed to submit its request for attorney's fees by **September 16, 2016**. Rite Aid may respond by **September 30, 2016**. Rite

Aid's motion to strike certain portions of 1199's submissions is DENIED as moot.[3] The Clerk of the Court is respectfully directed to terminate the motions, Docs. 16, 20, and 23.

It is SO ORDERED.

Dated: September 1, 2016
       New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.

---

[3] Rite Aid moves to strike portions of 1199's submissions concerning Rite Aid's employees' risk of losing their health benefits. See Docs. 23 & 24. Because the Court's decision does not depend on these allegations, the Court need not decide whether to strike these aspects of the papers.